IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS TURE,<br><br>      Petitioner,<br><br>vs.<br><br>STEVEN RACETTE, Superintendent,<br>Clinton Correctional Facility,[1]<br><br>      Respondent. | No. 9:12-cv-01864-JKS<br><br>MEMORANDUM DECISION |

   Nicholas Ture, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Ture is currently in the custody of the New York State Department of Corrections and Community Supervision and is incarcerated at Clinton Correctional Facility. Respondent has answered, and Ture has not replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

   On December 1, 2009, Ture was charged with attempted murder in the second degree, assault in the first degree, assault in the second degree, and criminal possession of a weapon in the fourth degree after he repeatedly stabbed his mother one day after being released from county jail. Ture was arraigned and entered a not guilty plea in Saratoga County Court on December 4, 2009. The People requested a competency evaluation to determine whether Ture was fit to stand trial. The court ordered the examination and stayed the proceedings pending the outcome.

---

   [1]   Steven Racette, Superintendent, Clinton Correctional Facility, is substituted for The Honorable Jerry Scarano, Saratoga County Court. Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts (petitioner "must name as respondent the state officer who has custody"); FED. R. CIV. P. 25(d).

At a conference held on March 1, 2010, the court noted that a Criminal Procedure Law ("CPL") § 730.30 competency examination had been performed and that two psychiatrists reported that Ture did not by reason of mental disease or defect lack the capacity to understand the proceedings against him or to assist in his own defense. The court then indicated that it would proceed to a hearing on the matter. The prosecutor informed the court that the People were ready to proceed with a hearing but that she understood that the defense had decided to consent to the issue of capacity and agree with the doctors' evaluations. Counsel for Ture confirmed that the defense would not be contesting Ture's capacity to proceed in the matter. Ture then asked to address the court and stated, "Well, I just wanted to say that, you know, I do love my mother, and I'm sorry this whole thing happened, and I just – you know, I'll do my time." The court then admonished Ture that "the less said, the better."

At the next conference, Ture requested new counsel, and the court denied the request. The court also explained to Ture that the prosecutor had indicated that the People would be willing to accept a plea. The prosecutor stated that the People were willing to accept a guilty plea to attempted murder with a sentence of 20 years. The court also stated that "it's possible in this case that you might be successful in entering a plea of not guilty by reason of mental disease or defect." The court explained the process for doing so, and the prosecutor indicated that the People would not object to such a plea. In response to his question, the court also informed Ture that he had time to consider his options.

On April 21, 2010, the prosecutor stated that the People were offering Ture the opportunity to plead guilty to all counts in the indictment in exchange for a sentence of 15 years' imprisonment. The prosecutor indicated that Ture would also be required to waive his right to

appeal. The court additionally informed Ture that a period of post-release supervision ranging from 2½ years to 5 years would also be imposed. When asked if he understood the terms of the offer, Ture stated that he did not understand "supervision." The court instructed defense counsel to explain post-release supervision to Ture off the record. Afterwards, the court asked Ture if he understood the entire offer, including post-release supervision; Ture answered in the affirmative. The court then asked Ture if he was in agreement with the terms and Ture responded, "Yes, sir, your Honor."

The court then explained the rights that Ture was giving up by pleading guilty, including the privilege against self-incrimination and his rights to a speedy and public jury trial and to cross-examine and offer witnesses. The court also explained that, as part of the plea agreement, Ture would be required to waive his right to appeal. The court asked Ture whether he understood what that meant, and Ture responded, "Does that mean I can't appeal? Cannot appeal or can appeal?" The court permitted Ture to confer off the record with his attorney. Thereafter, Ture stated that he understood the waiver of the right to appeal. The court additionally warned Ture that the instant offense was a felony and that a future felony conviction could lead to enhanced sentencing because of the instant offense. Ture indicated that he understood. Ture further stated that he understood the court's statement that he could not be forced into pleading guilty but would have to do it freely and voluntarily.

The court then asked Ture, "This morning are you on any kind of drugs or medication or are you suffering from any kind of illness that would make it difficult for you to understand what is being said here?" Ture replied, "No, I'm not." Ture confirmed his intention to enter an *Alford*

plea.[2] The prosecution then explained the evidence against Ture, including two knives, three eyewitnesses, the statement of the victim, and photographs of a blood smear on Ture and his clothes. Ture then pled guilty to each of the charges.

On June 17, 2010, Ture appeared with counsel for sentencing. The People requested that the negotiated 15-year sentence be imposed and that an order of protection be issued for the victim. Ture addressed the court and asked for leniency, stating:

> I realize what I have done is terrible. Believe me when I say no one is more sorry than I am. . . . . I want to make it very clear that I honestly did not intentionally mean for this to happen, and I would never hurt her in the right mind. I honestly don't remember attacking her at all. I don't — I blacked out, and I was — I was blacked out for most of the end of last Summer.
> On a positive note, my mother has been coming to see me regularly. We've been having good talks, and we've moved on from what has happened, and there are no hard feelings between us. We both agree this was a blackout, and we both agree that it was caused by me not being on my medications for so long. We also feel it could have been prevented. Like she said, we're angry with the Saratoga City Court system. They had sent out a warrant . . . to take me to the hospital to be treated. Instead of doing so, they incarcerated me early on a misdemeanor. Judge Wait knew of my condition and knew I needed to be hospitalized. He instead sent me to County Jail for an evaluation, and the doctors didn't help, and I did my 20 days and just got worse. And I was never put on my medicine, and I was then released to my parents in worse condition [sic] I've been in. I committed my act the following morning of being released. And we feel none of this would have happened if I had only been sent to the hospital like the warrant had said.
> . . . . I've spent the last ten months in the medical unit of the County Jail, two of those months were at Marcy Psychiatric. I've been taking my meds everyday, I've caused no trouble, and I've been doing very well.

The court sentenced Ture to concurrent determinate prison terms of 15 years for the attempted murder and first-degree assault convictions plus an additional 5-year term of post-release supervision. The court also sentenced Ture to a concurrent determinate term of 5 years'

---

[2] An *Alford* plea is entered when the defendant "voluntarily, knowingly, and understandingly consent[s] to the imposition of a prison sentence even [though] he is unwilling or unable to admit his participation in the acts constituting the crime." *N. Carolina v. Alford*, 400 U.S. 25, 37 (1970).

imprisonment plus 3 years of post-release supervision for the second-degree assault conviction and a concurrent 1-year term of imprisonment for the criminal possession of a weapon conviction.

By papers dated January 24, 2011, Ture moved *pro se* to vacate the judgment of conviction pursuant to CPL § 440.10 on the ground that there was newly discovered evidence of his innocence, namely, his untreated mental illness. Ture also claimed that his attorney failed to inform him of his right to testify before the grand jury and that his sentence was harsh and excessive. The County Court denied the motion, finding that the newly-discovered evidence claim was without merit and that his excessive sentence claim was a matter of record and thus not properly subject to collateral review. Ture did not appeal the court's § 440.10 denial.

Through counsel, Ture appealed his conviction, arguing that the trial court should not have accepted Ture's guilty plea in light of the evidence that Ture was not guilty by reason of mental disease or defect. The Appellate Division denied the appeal in a reasoned opinion concluding that "the proof regarding his mental capacity does not establish that he was incompetent." *People v. Ture*, 941 N.Y.S.2d 530, 530-31 (N.Y. App. Div. 2012). Ture sought leave to appeal the denial to the New York Court of Appeals, which was summarily denied on June 7, 2012. *People v. Ture*, 973 N.E.2d 218 (N.Y. 2012).

Ture timely filed a Petition for a Writ of Habeas Corpus to this Court on November 30, 2012.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Ture raises four grounds for relief. First, Ture argues that he is "[n]ot guilty due to [the] negligence of county jail and Saratoga Court" because

5

he was denied hospitalization and unmedicated when he was released from his prior incarceration. He next argues that his pre-trial counsel was prejudiced against him and told him that he would not assert arguments or raise evidence that challenged his culpability and that his appellate counsel was ineffective for failing to raise the issue of the negligence of the County Jail on appeal and by failing to request oral argument. He additionally argues that he is not guilty of the offense because of mental infirmity. Finally, Ture argues that his sentence was harsh and excessive.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Ture has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

## IV. DISCUSSION

A. Exhaustion

Respondent correctly contends that Ture has failed to exhaust all but his third claim. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). To be deemed exhausted, a claim must have been presented to the highest state court that may consider the

issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

On direct appeal, Ture raised only his claim that the County Court should not have accepted his guilty plea in light of the evidence that Ture was not guilty by reason of mental disease or defect which, construed liberally as discussed below, encompasses the third claim in his Petition. Ture also sought leave to appeal the denial in the New York Court of Appeals, thus completing the exhaustion process. Although Ture raised the remaining claims in his *pro se* CPL § 440.10 motion, Ture did not seek leave to appeal the denial of that motion. Thus, these claims are unexhausted.

With the exception of the ineffective assistance of counsel claim (claim 2), his unexhausted claims are procedurally barred. Because Ture's claims are based on the record, they could have been raised in his direct appeal but were not; consequently, Ture cannot bring a motion to vacate as to these claims. N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,] [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Moreover, Ture cannot now raise these claims on direct appeal because he has already filed the direct appeal and leave application to which he is entitled. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991).

8

"[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey*, 933 F.2d at 121. A habeas petitioner may only avoid dismissal of his procedurally defaulted claims if he can demonstrate "cause for the default and prejudice from the asserted error," *House v. Bell*, 547 U.S. 518, 536 (2006), or a "fundamental miscarriage of justice," *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986), superceded by statute on other grounds, *United States v. Gonzalez-Largo*, No. 07-cv-0014, 2012 WL 3245522, at *2 (D. Nev. Aug. 7, 2012). A miscarriage of justice is satisfied by a showing of actual innocence. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). Ture does not claim that cause exists for his procedural default, nor does he assert actual innocence. Because Ture may not now return to state court to exhaust these claims, the claims may be deemed exhausted but procedurally defaulted from habeas review. *See Ramirez v. Att'y Gen.*, 280 F.3d 87, 94 (2d Cir. 2001).

Ture's unexhausted ineffective assistance of counsel claim is not barred, however, because there is no time limit or number bar in filing writ of error coram nobis applications. *See Smith v. Duncan*, 411 F.3d 340, 347 n.6 (2d Cir. 2005); *Turner v. Sabourin*, 217 F.R.D. 136, 147 (E.D.N.Y. 2003). Ture may therefore still exhaust this claim in state court. This Court could stay the Petition and allow Ture to return to state court to satisfy the exhaustion requirement as to the remaining claim. *See Zarvela v. Artuz*, 254 F.3d 374, 380-83 (2d Cir. 2001). However, Ture has not requested that this Court stay and hold his Petition in abeyance. Moreover, the Supreme Court has held that it is an abuse of discretion to stay a mixed petition pending

9

exhaustion where: 1) the petitioner has not shown good cause for failing to exhaust all available state court remedies; and 2) the unexhausted claim is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). In his Petition, Ture provides no reason why he did not seek relief on this claim through a coram nobis application to the state court.

Despite Ture's failure to exhaust the majority of his claims, this Court nonetheless may deny his claims on the merits and with prejudice. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). This is particularly true where the grounds raised are meritless. *See Rhines*, 544 U.S. at 277. Accordingly, this Court declines to dismiss these claims solely on exhaustion grounds and will instead reach the merits of the claims as discussed below.

B.      Merits

Claims 1 and 3: Not Guilty

In claim 1, Ture argues that he is "[n]ot guilty due to [the] negligence of county jail and Saratoga Court." He alleges that the County Court and Jail's failure to hospitalize and medicate him caused him to attack his mother just 24 hours after he was released from jail. Ture similarly asserts in claim 3 that he is "[n]ot guilty due to mental infirmity." In support of this claim, he states that he "was off medication for a period of twenty days before and during time of attack[,] have diagno[ses] of scitsophrenia [sic] and bipolar, have been diagnosed since the age of sixteen and have been off and on medication for the past seven years." Because Ture alleges that the County Court and Jail's negligence in failing to ensure that he was medicated led to his mental infirmity, the substance of these claims appear to be identical and both attack his guilty plea.

10

Construing Ture's *pro se* Petition liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), this Court may discern that Ture's not guilty claims raise three potential arguments: 1) his plea was involuntary, unknowing, or unintelligent; 2) the trial court should have rejected his plea and instead adjudicated him not guilty due to mental disease or defect; and 3) there was an insufficient basis for the plea.

On direct appeal, the Appellate Division rejected Ture's challenge to his plea, concluding:

> [B]y not moving to withdraw his plea or vacate the judgment of conviction, [Ture] did not preserve his argument[] . . . that his *Alford* plea was not supported by sufficient record proof. In any event, the record reveals that County Court conducted a thorough plea allocution, [Ture] indicated that he understood and agreed to the sentence, the evidence that he committed the acts was compelling, and the proof regarding his mental capacity does not establish that he was incompetent.

*Ture*, 941 N.Y.S. 2d at 530 (internal citations and quotation marks omitted).

As Respondent notes, Ture's failure to move to withdraw his plea or vacate the judgment of conviction dooms any challenge to his plea on federal habeas review. In order to preserve a claim that a guilty plea was involuntarily made or erroneously accepted, New York courts have held that "a defendant must either move to withdraw the plea under C.P.L. § 220.60(3) or move to vacate the judgment of conviction under C.P.L. § 440.10."[3] *Snitzel v. Murry*, 371 F. Supp. 2d 295, 300-01 (W.D.N.Y. 2004) (citing New York cases); *see, e.g.*, *People v. Clarke*, 712 N.E.2d 668, 669 (N.Y. 1999); *People v. Lopez*, 525 N.E.2d 5, 6 (N.Y. 1988). It is well settled in this

---

[3] Section 220.60(3) provides: "At any time before the imposition of a sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, or a plea of not responsible by reason of mental disease or defect, to withdraw such plea, and in such event the entire indictment, as existed at the time of such plea, is restored." N.Y. CRIM. PROC. LAW § 220.60(3).

Circuit that this preservation rule provides an adequate and independent state ground on which to deny habeas relief. *See, e.g.*, *Hunter v. McLaughlin*, No. 04 Civ. 4058, 2008 WL 482848, at *1-4 (S.D.N.Y. Feb. 21, 2008); *Shanks v. Greiner*, No. 01 Civ. 1362, 2001 WL 1568815, at *3-4 (S.D.N.Y. Dec. 10, 2001). Because the Appellate Division rejected Ture's challenge to his plea on independent and adequate state procedural grounds, federal review is barred unless Ture establishes cause for the default and resulting prejudice or that a fundamental miscarriage of justice will result from the Court's failure to review the claim. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Ture fails to establish either of these mitigating factors in this case. Even if he could demonstrate cause, which does not appear from the record, he cannot show prejudice insofar as the arguments underlying the claim are meritless. *See Pettigrew v. Bezio*, No 10-CV-1053, 2012 WL 1714934, at *4 (W.D.N.Y. May 15, 2012) (concluding that a petitioner cannot show actual prejudice where the underlying defaulted claim is meritless); *see also Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (noting that federal habeas relief is unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated).

As the appellate court found, the record belies any claim that his guilty plea was involuntary, unknowing, or unintelligent. *Ture*, 941 N.Y.S.2d at 530. The record indicates that, prior to accepting his plea, the trial court informed Ture that "it's possible in this case that you might be successful in entering a plea of not guilty by reason of mental disease or defect." The court explained the process for doing so, and the prosecutor indicated that the People would not object to such a plea. The court also informed Ture that he had time to consider his options. It therefore appears that Ture weighed his options and the risks attendant with each and then

entered his *Alford* plea. Ture further indicated that he was pleading freely and voluntarily and that he was not suffering from any illness that would make it difficult for him to understand the proceedings. Solemn declarations in open court carry a strong presumption of verity, and "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Moreover, any claim that the trial court should not have accepted his *Alford* plea and instead adjudicated him not guilty by reason of mental disease or defect is barred by his guilty plea.[4] *See Bakic v. United States*, 971 F. Supp. 697, 700 (N.D.N.Y. 1997) (voluntary guilty plea precludes subsequent collateral attack based on insanity defense); *see also United States v. Bendicks*, 449 F.2d 313, 315 (5th Cir. 1971) (insanity defense is non-jurisdictional). A defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). "It is well settled that a defendant's plea of guilty admits all of the elements of a

---

[4] The fact that Ture's plea was made pursuant to *Alford* and not an unqualified guilty plea does not save his claim. *See In re Silmon v. Travis*, 741 N.E.2d 501, 95 N.Y.2d 470, 475 (N.Y. 2000) (noting that, under New York law, *Alford* pleas "are no different from other guilty pleas"). Courts within this Circuit have held in § 2254 cases that the *Tollett* "principle applies with equal force where, as here, the accused entered an *Alford* plea." *See, e.g.*, *Kalu v New York*, No. 08-CV-4984, 2009 WL 7063100, at *10 (E.D.N.Y. Sept. 15, 2009) (collecting cases), *report adopted sub nom*, *Ndukwe v. New York*, 2010 WL 4386680 (E.D.N.Y. Oct. 28, 2010). Other Circuits have come to the same conclusion. *See Fields v. Att'y Gen.*, 956 F.2d 1290, 1294-96 (4th Cir. 1992) (applying *Tollett* to *Alford* plea); *Hibbler v. Benedetti*, No. 07-cv-00467, 2011 WL 2470516, at *3 n.5 (D. Nev. June 17, 2011) ("Ninth Circuit law confirms that the *Tollett* and *Hill* waiver and bar rules apply to *Alford* or *nolo contendere* pleas to the same extent as unqualified guilty pleas.").

formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (internal citation omitted). The later assertion of a defense to the criminal charge which does not challenge the court's jurisdiction is therefore precluded by a guilty plea. *See United States v. Hsu*, 669 F.3d 112, 117-18 (2d Cir. 2012) (noting that a defendant ordinarily waives a statute of limitations defense by pleading guilty to an offense).

Furthermore, given the strong evidence against him—including two knives, statements from the victim and eyewitnesses, and the victim's blood on his clothing—there was a sufficient evidentiary basis for his *Alford* plea. *Alford*, 400 U.S. at 37 (there must be a "strong factual basis for the plea" to withstand scrutiny under *Alford*). Ture thus cannot prevail on any challenge to his *Alford* plea based on his claim that he cannot be held culpable for the offense.

Claim 2: Ineffective Assistance of Counsel

Ture next argues that both his pre-trial counsel and appellate counsel rendered ineffective assistance that warrants habeas relief.

a. New York and *Strickland* Standards on Habeas Review

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the

14

defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Ture must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id*. (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of

15

the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id.* at 125.

### b. Pre-Trial Counsel

Ture contends that his counsel was ineffective because counsel knew the victim and refused to put forth evidence of the County Court and Jail's negligence in order to demonstrate that Ture was not culpable for his actions. But the *Tollett* bar discussed with regard to claim 1, *supra*, also applies to "ineffective assistance claims relating to events prior to the guilty plea." *United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996). Therefore, any claim that Ture's counsel failed to raise evidence challenging Ture's culpability is similarly barred by Ture's *Alford* plea.

16

c. Appellate Counsel

Ture additionally argues that his appellate counsel was ineffective "because he would not raise these issues of negligence by the County Jail and Saratoga Court as a defense" and "did not use his chance of an oral argument."

Because one of the main functions of appellate counsel is to "winnow[ ] out weaker arguments on appeal," *Jones v. Barnes*, 463 U.S. 745, 751 (1983), counsel is not required to present every nonfrivolous claim on behalf of a defendant appealing his or her conviction, *see Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citation omitted); *accord Barnes*, 463 U.S. at 754. To state a claim of ineffective assistance of appellate counsel, a petitioner must show (1) "that his counsel was objectively unreasonable in failing to find arguable issues to appeal" and (2) "a reasonable probability that, but for his counsel's unreasonable failure to" raise an issue on appeal "he would have prevailed on his appeal." *Smith*, 528 U.S. at 285 (citations omitted). "To establish prejudice in the appellate context, a petitioner must demonstrate that there was a reasonable probability that his claim would have been successful before the state's highest court." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (citation and internal quotation marks and brackets omitted).

Ture falls far short of meeting these standards. The record indicates that Ture's appellate counsel submitted a well-reasoned and thorough brief arguing that the court should not have accepted Ture's guilty plea in light of the evidence that Ture was not guilty by reason of mental disease or defect. Because Ture had accepted a plea offer and waived his right to appeal, the

17

grounds on which Ture could challenge his conviction were limited. Counsel made the tactical decision to not directly raise the negligence of the County Court and Jail but rather to use those facts to argue that the trial court should have rejected his *Alford* plea and instead adjudicated him not guilty by reason of mental disease or defect. Ture cannot show that appellate counsel's tactical decision was objectively unreasonable, particularly given that, as discussed *supra*, the substances of the claims are substantially identical. Moreover, because Ture's asserted negligence claim is not a jurisdictional or constitutional defense, New York law—like federal law—mandates that Ture forfeited this claim by pleading guilty. *See People v. Parilla*, 870 N.E.2d 142, 145 (N.Y. 2007) (holding that "under a guilty plea, a defendant . . . forfeits the right to revive certain claims made prior to the plea" (citation and internal quotation marks omitted)). Thus, Ture cannot demonstrate that the New York Court of Appeal would have found in his favor on this claim even if appellate counsel had directly asserted it.

Ture's assertion that counsel was ineffective for failing to request or participate in oral argument also must fail. Given that appellate counsel drafted a well-reasoned and thorough brief asserting Ture's most viable argument, Ture cannot show that counsel's decision to not partake in oral argument rendered him ineffective. *See, e.g.*, *Vega v. United States*, 261 F. Supp. 2d 175, 177 (E.D.N.Y. 2003) (denying ineffective assistance of appellate counsel claim where counsel submitted an appellate brief but neglected to request an oral argument because petitioner failed to show that oral argument would have changed the results of his appeal); *see also United States v. Birtle*, 792 F.2d 846, 847-48 (9th Cir. 1986) ("The failure of counsel to appear at oral argument or to file a reply brief is not so essential to the fundamental fairness of the appellate

process as to warrant application of a per se rule of prejudice."). Accordingly, Ture cannot prevail on any argument asserted in his ineffective assistance of counsel claim.

Claim 4: Harsh and Excessive Sentence

Finally, Ture argues that his sentence is excessive for a first-time felon with no prior violent history. Ture was convicted, upon his guilty plea, of attempted murder and first-degree assault, both of which are class B felonies. *See* N.Y. PENAL LAW §§ 110/125.25(1), 120.10(1). New York law mandates that the sentence imposed for these crimes must be at least 5 years and must not exceed 25 years. *Id.* § 70.02(3)(a). The 15-year sentence imposed upon Ture was thus within the statutory range. Ture was also convicted of second-degree assault, a class D felony, for which New York law requires a sentence that is at least 2 years and does not exceed 7 years. *See* N.Y. PENAL LAW §§ 120.05(2), 70.02(3)(c). The court sentenced Ture to 5 years' imprisonment on this conviction. The court also sentenced him to 1 year of imprisonment for the criminal possession of a weapon conviction, the maximum sentence allowed under New York law. *See* N.Y. PENAL LAW §§ 265.01(2), 70.15(1). These sentences were all ordered to run concurrently. The court additionally imposed a 5-year term of post-release supervision for the class B felonies and a 3-year term for the class D felonies. *See* N.Y. PENAL LAW §§ 70.45(2)(e),(f).

It is well-settled that an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence is within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Hernandez v. Conway*, 485 F. Supp. 2d 266, 284 (W.D.N.Y. 2007) (excessive sentence claim does not present a federal

question cognizable on habeas review where the sentence was within the range prescribed by state law). Because the sentences imposed were within the statutory range prescribed by New York law, Ture cannot prevail on this claim.

V. CONCLUSION

Ture is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: June 25, 2014.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge